IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION


SHANNON MONTGOMERY                                              PLAINTIFF


v.                              NO. 3:16-cv-00043 PSH


CAROLYN W. COLVIN, Acting Commissioner                          DEFENDANT
of the Social Security Administration


### MEMORANDUM OPINION AND ORDER

Plaintiff Shannon Montgomery ("Montgomery") began the case at bar by filing a complaint pursuant to 42 U.S.C. 405(g). In the complaint, he challenged the final decision of the Acting Commissioner of the Social Security Administration ("Commissioner"), a decision based upon findings made by an Administrative Law Judge ("ALJ").

Montgomery maintains that the ALJ's findings are not supported by substantial evidence on the record as a whole.[1] Montgomery specifically maintains that his residual functional capacity was not properly assessed because of the manner in which the evidence was evaluated. For the reasons that follow, the Court agrees.

The ALJ is required to assess the claimant's residual functional capacity, which is

---

1

The question for the Court is whether the ALJ's findings are supported by substantial evidence on the record as a whole. "Substantial evidence means less than a preponderance but enough that a reasonable person would find it adequate to support the decision." See Boettcher v. Astrue, 652 F.3d 860, 863 (8th Cir. 2011).

a determination of "the most a person can do despite that person's limitations." See Brown v. Barnhart, 390 F.3d 535, 538-39 (8th Cir. 2004). The assessment is made using all of the relevant evidence in the record, but the assessment must be supported by some medical evidence. See Wildman v. Astrue, 596 F.3d 959 (8th Cir. 2010). As a part of assessing the claimant's residual functional capacity, the ALJ is required to evaluate the claimant's subjective complaints. See Pearsall v. Massanari, 274 F.3d 1211 (8th Cir. 2001). The ALJ does so by considering the medical evidence and evidence of the claimant's "daily activities; duration, frequency, and intensity of pain; dosage and effectiveness of medication; precipitating and aggravating factors; and functional restrictions." See Id. at 1218 [citing Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984)].

The evidence relevant to Montgomery's residual functional capacity reflects that in August of 2007, he had surgery on his neck. See Transcript at 401. The record is silent as to his medical condition during the years following the surgery. Beginning in 2011 and continuing into 2012, though, he occasionally sought medical attention for the pain in his neck, shoulders, arms, and back. See Transcript at 400-404 (05/03/2011); 396-399 (09/20/2011); 352-354 (05/23/2012); 347-349 (06/29/2012); 342-345 (08/13/2012); 340-341 (08/22/2012); 392-395 (08/24/2012). MRI testing performed during that period revealed degenerative disc disease and "mild effacement of the left neural foramen at C4-C5" and "moderate-severe effacement of the neural foramina bilaterally" at C5-C6. See Transcript at 350 (06/11/2011).

In November of 2012, Dr. Clarence Ballard, M.D., ("Ballard") reviewed

Montgomery's medical records and completed an assessment of his residual functional capacity. See Transcript at 96-98. Ballard opined that the medical evidence of record supported a light residual functional capacity.

In December of 2013, Dr. Steven Strode, M.D., ("Strode") reviewed Montgomery's medical records and completed an assessment of his residual functional capacity. See Transcript at 130-132. Strode opined that the medical evidence of record supported a light residual functional capacity but with "limit hazards." See Transcript at 132.

Beginning in 2014, Montgomery again sought medical attention for the pain in his neck, shoulders, arms, and back. See Transcript at 459-462 (02/17/2014), 446-449 (02/24/2014), 444-445 (02/25/2014), 441-442 (02/27/2014), 439-440 (03/05/2014), 437-438 (03/06/2014), 435-436 (03/07/2014), 433-434 (03/10/2014), 431-432 (03/11/2014), 429-430 (03/13/2014), 427-428 (03/17/2014), 425-426 (03/18/2014), 421-424 (03/20/2014), 418-420 (03/25/2014). He was prescribed medication for his pain and, on one occasion, enrolled in a physical therapy program. At the conclusion of the approximately one month program, he was "able to report reduced muscle spasms and localized pain, however, he continue[d] to have numbness/tingling in his [upper extremities]. He was discharged having partially [met] his goals." See Transcript at 421. At a subsequent examination, it was noted that the physical therapy appear to "help[] the spasm in [his] neck but didn't really help the numbness in [his] arm and leg." See Transcript at 418.

In April of 2014, MRI testing was performed again on Montgomery's cervical spine.

See Transcript at 470-471. The results of the testing revealed "[d]egenerative disc changes at C5-C6 secondary to posterior disc osteophyte complex with bilateral moderate to severe effacement of the neural foramina[.] [T]his appears to have progressed slightly since [a June of 2011 MRI]." See Transcript at 471.

In September of 2014, MRI testing was performed on Montgomery's lumbar spine. See Transcript at 472-473. The results of the testing revealed disc bulging at L2-L3, L3-L4, and L5-S1. Multi-level degenerative disc and joint disease were diagnosed, "most prominent at the L3 through L5 levels," and prominent facet arthropathy was noted at the L5-S1 level. See Transcript at 473.

MRI testing was also performed on Montgomery's thoracic spine in September of 2014. See Transcript at 474-475. The results of the testing revealed "broad based" disc bulging and "moderate facet hypertrophy" at T10-T11 and T11-T12. See Transcript at 475. Multi-level degenerative disc and joint disease were diagnosed.

Montgomery testified during the administrative hearing. See Transcript at 70-85. He was forty-five years old at the time of the hearing. He stands seventy-three inches tall and has weighed as much as 250 pounds. He worked for four years as a deputy with the Poinsett County, Arkansas, Sheriff's Office and then worked for seventeen years as an officer with the Trumann, Arkansas, Police Department. He stopped working because of the pain and muscle spasms in his neck and back. A typical day consists primarily of lying on the couch, although he is able to take his sons to and from school. Montgomery is seeing a physician for his pain and is being treated with medication and physical therapy.

The medication helps relieve some of his pain, but also "knock[s] [him] out." See Transcript at 75. Physical therapy was of little benefit as he continued to experience pain. If he stands for long periods of time, his back begins to hurt. He can sit for no more than forty-five minutes, after which time he must take pain medication, lie down, and/or apply heat. The pain in his shoulders, arms, and hands impacts his ability to grasp and grip objects.

The ALJ found at step two of the sequential evaluation process that Montgomery's severe impairments include "cervical degenerative disc disease status post fusion," "lumbar degenerative disc disease with endplate fracture," and obesity. See Transcript at 54. The ALJ assessed Montgomery's residual functional capacity and found that he is capable of performing a reduced range of light work. Specifically, the ALJ found, inter alia, that Montgomery can lift and carry up to twenty pounds occasionally and up to ten pounds frequently, can stand and/or walk up to six hours in an eight hour workday, and cannot engage in frequent overhead reaching. In making the assessment, the ALJ gave great weight to the opinions offered by Ballard and Strode and discounted the severity of Montgomery's subjective complaints because of the inconclusive medical record and his inconsistent statements. The ALJ found at step four that Montgomery is capable of performing his past relevant work as a deputy sheriff. The ALJ alternatively found at step five that there is other work in the national economy a hypothetical individual with Montgomery's residual functional capacity could perform.

Montgomery bears the burden of proving his residual functional capacity, which

is admittedly an administrative determination reserved for the ALJ. See Cox v. Astrue, 495 F.3d 614 (8th Cir. 2007). On the record now before the Court, though, it cannot be said that substantial evidence on the record as a whole supports the assessment made of Montgomery's residual functional capacity. The Court so finds for the following three reasons.

First, although Ballard and Strode's findings are clearly entitled to some weight, the Court is not persuaded that their findings are entitled to the great weight given by the ALJ. Ballard and Strode are consultants who never examined Montgomery; they simply summarized his medical records and offered assessments of his residual functional capacity. Moreover, they prepared their assessments prior to 2014, or before Montgomery again began seeking medical attention for the pain in his neck, shoulders, arms, and back. Would Ballard and Strode's findings been different had they had access to Montgomery's medical records after December of 2013? The Court has no idea.

Second, it appears that the ALJ impermissibly drew his own inferences about the severity of Montgomery's impairments from the record. See Shontos v. Barnhart, 328 F.3d 418 (8th Cir. 2003) (ALJ cannot draw own inferences from records). The Court cannot tell what the ALJ specifically relied upon in the record in finding that Montgomery is capable of performing a reduced range of light work, or whether the results of the testing and the various progress notes are indeed consistent with the most he can do despite his limitations.

Third, although the ALJ noted in passing that consideration was given to

Montgomery's prior work history, see Transcript at 56, 57, the Court is not persuaded that the ALJ gave it adequate consideration. This case, pared to its essence, is a pain case, and the manner in which Montgomery's subjective complaints are adjudicated is critical to its fair disposition. Montgomery worked for twenty-one years as a law enforcement officer, and he testified that he only stopped working because of the pain and muscle spasms in his neck and back. The evidence of his extensive work history undoubtedly buttresses his credibility as to his subjective complaints of pain.

It is for the foregoing reasons that substantial evidence on the record as a whole does not support the ALJ's assessment of Montgomery's residual functional capacity. A remand is necessary. Upon remand, the ALJ shall re-assess Montgomery's residual functional capacity. As a part of doing so, the ALJ shall send Montgomery for a consultative examination and shall re-evaluate his credibility as to his subjective complaints of pain.[2]

The Commissioner's decision is therefore reversed, and this case is remanded. The remand in this case is a "sentence four" remand as that phrase is defined in 42 U.S.C. 405(g) and Melkonyan v. Sullivan, 501 U.S. 89 (1991). Judgment will be entered for Montgomery.

IT IS SO ORDERED this 27th day of September, 2016.

---

[2] Upon remand, the ALJ shall also clarify the confusion that arose as a result of the vocational expert's testimony. The nature of Montgomery's past work appears to have been mis-identified, and there may be a conflict between the vocational expert's testimony and the description of Montgomery's work in the Dictionary of Occupational Titles and its companion volume.

_____
UNITED STATES MAGISTRATE JUDGE